UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RACHEL C.,[1]

  **Plaintiff,**

v.

FRANK BISIGNANO,[2]
**Commissioner of Social Security,**

  **Defendant.**

Case No. 3:23-cv-8285
Magistrate Judge Norah McCann King

## OPINION AND ORDER

  This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Rachel C. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. After careful consideration of the entire record, including the entire administrative record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court the Court reverses the Commissioner's decision and remands the matter for further proceedings.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* D.N.J. Standing Order 2021-10.
[2] Frank Bisignano, the current Commissioner of Social Security, is substituted as Defendant in his official capacity. *See* Fed. R. Civ. P. 25(d).

1

I.     **PROCEDURAL HISTORY**

On November 10, 2020, Plaintiff protectively filed her application for benefits, alleging that she has been disabled since July 1, 2020. R. 102, 115, 217–23. The application was denied initially and upon reconsideration. R. 136–42, 145–49. Plaintiff sought a *de novo* hearing before an administrative law judge ("ALJ"). R. 150–51. ALJ Theresa Merrill held a hearing on May 10, 2022, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 42–82. In a decision dated August 23, 2022, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act from July 1, 2020, Plaintiff's alleged disability onset date, through the date of that decision. R. 10–20. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on June 22, 2023. R. 1–6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On August 23, 2023, Plaintiff consented to disposition of the matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. ECF No. 4.[3] On June 12, 2024, the case was reassigned to the undersigned. ECF No. 16. The matter is ripe for disposition.

II.     **LEGAL STANDARD**

     A.     **Standard of Review**

In reviewing applications for Social Security disability benefits, this Court has the authority to conduct a plenary review of legal issues decided by the ALJ. *Knepp v. Apfel*, 204

---

[3] The Commissioner has provided general consent to Magistrate Judge jurisdiction in cases seeking review of the Commissioner's decision. *See* Standing Order In re: Social Security Pilot Project (D.N.J. Apr. 2, 2018).

F.3d 78, 83 (3d Cir. 2000). In contrast, the Court reviews the ALJ's factual findings to determine if they are supported by substantial evidence. *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000); *see also* 42 U.S.C. § 405(g). The United States Supreme Court has explained this standard as follows:

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted); *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x 613, 616 (3d Cir. 2009) (citations and quotations omitted); *K.K. ex rel. K.S. v. Comm'r of Soc. Sec.*, No. 17-2309, 2018 WL 1509091, at *4 (D.N.J. Mar. 27, 2018).

The substantial evidence standard is a deferential standard, and the ALJ's decision cannot be set aside merely because the Court "acting de novo might have reached a different conclusion." *Hunter Douglas, Inc. v. NLRB*, 804 F.2d 808, 812 (3d Cir. 1986); *see, e.g., Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) ("Where the ALJ's findings of fact are supported by substantial evidence, we are bound by those findings, even if we would have decided the factual inquiry differently.") (citing *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999)); *K.K.*, 2018 WL 1509091, at *4 ("'[T]he district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder.'") (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)).

Nevertheless, the Third Circuit cautions that this standard of review is not "a talismanic or self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) ("The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham."); *see Coleman v. Comm'r of Soc. Sec.*, No. 15-6484, 2016 WL 4212102, at *3 (D.N.J. Aug. 9, 2016). The Court has a duty to "review the evidence in its totality" and "take into account whatever in the record fairly detracts from its weight." *K.K.*, 2018 WL 1509091, at *4 (quoting *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (citations and quotations omitted)); *see Cotter v. Harris*, 642 F.2d 700, 706 (3d Cir. 1981) (stating that substantial evidence exists only "in relationship to all the other evidence in the record"). Evidence is not substantial if "it is overwhelmed by other evidence," "really constitutes not evidence but mere conclusion," or "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114); *see K.K.*, 2018 WL 1509091, at *4. The ALJ's decision thus must be set aside if it "did not take into account the entire record or failed to resolve an evidentiary conflict." *Schonewolf*, 972 F. Supp. at 284-85 (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)).

Although an ALJ is not required "to use particular language or adhere to a particular format in conducting [the] analysis," the decision must contain "sufficient development of the record and explanation of findings to permit meaningful review." *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119 (3d Cir. 2000)); *see K.K.*, 2018 WL 1509091, at *4. The Court "need[s] from the ALJ not only an expression of the evidence s/he considered which supports the result, but also some indication of

4

the evidence which was rejected." *Cotter*, 642 F.2d at 705-06; *see Burnett*, 220 F.3d at 121 ("Although the ALJ may weigh the credibility of the evidence, [s/]he must give some indication of the evidence which [s/]he rejects and [the] reason(s) for discounting such evidence.") (citing *Plummer v. Apfel*, 186 F.3d 422, 429 (3d. Cir. 1999)). "[T]he ALJ is not required to supply a comprehensive explanation for the rejection of evidence; in most cases, a sentence or short paragraph would probably suffice." *Cotter v. Harris*, 650 F.2d 481, 482 (3d Cir. 1981). Absent such articulation, the Court "cannot tell if significant probative evidence was not credited or simply ignored." *Id.* at 705. As the Third Circuit explains:

> Unless the [ALJ] has analyzed all evidence and has sufficiently explained the weight [s/]he has given to obviously probative exhibits, to say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober*, 574 F.2d at 776; *see Schonewolf*, 972 F. Supp. at 284-85.

Following review of the entire record on appeal from a denial of benefits, the Court can enter "a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). Remand is appropriate if the record is incomplete or if the ALJ's decision lacks adequate reasoning or contains illogical or contradictory findings. *See Burnett*, 220 F.3d at 119-20; *Podedworny v. Harris*, 745 F.2d 210, 221-22 (3d Cir. 1984). Remand is also appropriate if the ALJ's findings are not the product of a complete review which "explicitly weigh[s] all relevant, probative and available evidence" in the record. *Adorno v. Shalala*, 40 F.3d 43, 48 (3d Cir. 1994) (internal quotation marks omitted); *see A.B. on Behalf of Y.F. v. Colvin*, 166 F. Supp.3d 512, 518 (D.N.J. 2016). A decision to "award

benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny*, 745 F.2d at 221-22 (citation and quotation omitted); *see A.B.*, 166 F. Supp.3d at 518.

**B.      Sequential Evaluation Process**

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof at steps one through four, and the Commissioner bears the burden of proof at step five." *Smith v. Comm'r of Soc. Sec.*, 631 F.3d 632, 634 (3d Cir. 2010) (citing *Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination

of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III.   ALJ DECISION AND APPELLATE ISSUES

Plaintiff was 36 years old on July 1, 2020, her alleged disability onset date. R. 19. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between that date and the date of the decision. R. 13. Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2025. R. 12.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: major depressive disorder; generalized anxiety disorder; bipolar disorder; borderline personality disorder; post-traumatic stress disorder ("PTSD"); fibromyalgia; and epilepsy. *Id.*

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 13–14.

At step four, the ALJ found that Plaintiff had the RFC to perform a full range of work at all exertional levels subject to certain additional limitations. R. 14–19. The ALJ also found that this RFC did not permit the performance of Plaintiff's past relevant work as a fast food clerk; babysitter; housekeeper/hotel; small parts assembler. R. 18–19.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs–*e.g.*, jobs as a marker, a document preparer, a mail sorter–existed in the national economy and could be performed by Plaintiff despite her lessened capacity. R. 19–20. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from July 1, 2020, her alleged disability onset date, through the date of the decision. R. 20.

Plaintiff disagrees with the ALJ's findings at steps three and four and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Brief,* ECF No. 11. The Commissioner takes the position that his decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief*, ECF No. 15.

## IV.     DISCUSSION

At step three of the sequential evaluation, the ALJ evaluated only Plaintiff's mental impairments and concluded that none of those impairments, whether considered singly or in combination, met or medically equaled any listed impairment. R. 13–14. Plaintiff contends that the ALJ erred by failing to evaluate whether Plaintiff's physical impairments—including

8

epilepsy—met or medically equaled a listed impairment. *Plaintiff's Brief*, ECF No. 11, pp. 17–21. For the reasons that follow, this Court agrees.

At step three, an ALJ considers whether the combination of the claimant's medically determinable impairments meets or medically equals the severity of any impairment in the Listing of Impairments. 20 C.F.R. § 404.1520(a)(4)(iii). An impairment meets a listed impairment if it satisfies "'*all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify.'" *Jones,* 364 F.3d at 504 (quoting *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)) (emphasis in original). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the *overall* functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531 (emphasis added). "[T]he medical criteria defining the listed impairments [are set] at a higher level of severity than the statutory standard" because the "listings define impairments that would prevent an adult, regardless of his age, education, or work experience, from performing *any* gainful activity, not just 'substantial gainful activity.'" *Id.* at 532 (emphasis in original) (quoting 20 C.F.R. § 416.925(a)). Although an ALJ is not required to use "particular language" when determining whether a claimant meets a listing, the ALJ's discussion must provide for "meaningful review." *Jones*, 364 F.3d at 505 (citing *Burnett*, 220 F.3d at 120). Accordingly, if the ALJ's decision, "read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing," "[t]his discussion satisfies *Burnett*'s requirement that there be sufficient explanation to provide meaningful review of the step three determination." *Id*.

9

Listing 11.02 addresses epilepsy.[4] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 11.02 (eff. 4/2/21 to 10/5/23). To meet this listing, the record must document seizures and the criteria under paragraphs A, B, C, or D:

> 11.02 Epilepsy, documented by a detailed description of a typical seizure and characterized by A, B, C, or D:
>
> A. Generalized tonic-clonic seizures (see 11.00H1a),[5] occurring at least once a month for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); or
>
> B. Dyscognitive seizures (see 11.00H1b),[6] occurring at least once a week for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); or
>
> C. Generalized tonic-clonic seizures (see 11.00H1a), occurring at least once every 2 months for at least 4 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:
>
> 1. Physical functioning (see 11.00G3a); or
> 2. Understanding, remembering, or applying information (see 11.00G3b(i)); or

---

[4] Epilepsy is a pattern of recurrent and unprovoked seizures that are manifestations of abnormal electrical activity in the brain. There are various types of generalized and "focal" or partial seizures. However, psychogenic nonepileptic seizures and pseudoseizures are not epileptic seizures for the purpose of 11.02. We evaluate psychogenic seizures and pseudoseizures under the mental disorders body system, 12.00. In adults, the most common potentially disabling seizure types are generalized tonic-clonic seizures and dyscognitive seizures (formerly complex partial seizures).

*Id.* at § 11.00H.

[5] Generalized tonic-clonic seizures "are characterized by loss of consciousness accompanied by a tonic phase (sudden muscle tensing causing the person to lose postural control) followed by a clonic phase (rapid cycles of muscle contraction and relaxation, also called convulsions). Tongue biting and incontinence may occur during generalized tonic-clonic seizures, and injuries may result from falling." *Id*.

[6] Dyscognitive seizures "are characterized by alteration of consciousness without convulsions or loss of muscle control. During the seizure, blank staring, change of facial expression, and automatisms (such as lip smacking, chewing or swallowing, or repetitive simple actions, such as gestures or verbal utterances) may occur. During its course, a dyscognitive seizure may progress into a generalized tonic-clonic seizure[.]"

      3. Interacting with others (see 11.00G3b(ii)); or
      4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
      5. Adapting or managing oneself (see 11.00G3b(iv)); or

      D. Dyscognitive seizures (see 11.00H1b), occurring at least once every 2 weeks for at least 3 consecutive months (see 11.00H4) despite adherence to prescribed treatment (see 11.00C); and a marked limitation in one of the following:

      1. Physical functioning (see 11.00G3a); or
      2. Understanding, remembering, or applying information (see 11.00G3b(i)); or
      3. Interacting with others (see 11.00G3b(ii)); or
      4. Concentrating, persisting, or maintaining pace (see 11.00G3b(iii)); or
      5. Adapting or managing oneself (see 11.00G3b(iv)).

*Id.*

At step two in the present case, the ALJ determined that Plaintiff suffered the severe impairment of, *inter alia*, "epilepsy". R. 13. At step three, however, the ALJ considered only Plaintiff's "mental impairments," R. 13, and found that those impairments, whether considered singly or in combination, neither met nor medically equaled Listings 12.04 (addressing depressive, bipolar and related disorders), 12.06 (addressing anxiety and obsessive-compulsive disorders), or 12.15 (addressing trauma- and stressor-related disorders). R. 13–14. Nowhere in her step three discussion did the ALJ address (or even mention) epilepsy. *Id*.

At step four, the ALJ mentioned Plaintiff's epilepsy and seizures, but these are conclusory references with no meaningful consideration. *See* R. 15 (noting Plaintiff's May 2022 hearing testimony that she "suffers from seizures"[7]), 16 (noting that Plaintiff "was diagnosed with a history of fibromyalgia and epilepsy" and that, in December 2020, Plaintiff's provider

---

[7] At the administrative hearing, Plaintiff testified that, with medication, she had last suffered a seizure eight or nine months previously but that, "a couple years" previously, she had experienced seizures "probably at least four times a month." R. 66-67.

11

prescribed a new medication, lamotrigine, for her epilepsy), 17 (noting that, in April 2021, an independent consultative examiner noted Plaintiff's "history including pain and seizure"), 18 (explaining that "despite the claimant's pain and diagnosis of fibromyalgia, she consistently had normal strength and gait. This supports no exertional limitations, but due to the pain and epilepsy, the claimant had postural limitations"; considering Plaintiff's "history of seizure" when crafting the RFC; and that "[d]ue to a history of seizure, the claimant must also avoid unprotected heights and moving mechanical parts"). In particular, the ALJ did not discuss, *inter alia*, the type of seizures that Plaintiff experienced[8], the frequency of her seizures, or any limitations flowing from those seizures. R. 13–18.

      While it is true that an ALJ is not required to use "particular language" when determining whether a claimant meets a listing, the ALJ's discussion must still provide for "meaningful review." *Jones*, 364 F.3d at 505 (citing *Burnett*, 220 F.3d at 120). In this case, considering the ALJ's decision as a whole, the Court cannot say that the ALJ's discussion regarding epilepsy met this standard. It is not clear to the Court how the ALJ concluded that Plaintiff does not meet or medically equal Listing 11.02. R. 13–18. *See Graham v. Kijakazi*, No. CV 20-1447, 2021 WL 3209725, at *4 (E.D. Pa. July 29, 2021) ("In the instant matter, meaningful judicial review of the ALJ's conclusion that Graham did not meet Listing 11.02 is not possible because the ALJ's analysis on this issue is sparse, vague and conclusory. . . . [T]he ALJ provided no substantive analysis, not did she cite to the requirements of Listing 11.02."); *Stem v. Saul*, No. CV 2:19-725, 2020 WL 4548056, at *4–5 (W.D. Pa. Aug. 6, 2020) (noting that "the ALJ did not expressly

---

[8] Plaintiff's testimony suggests that she may have experienced grand mal seizures, R. 67–68, and the medical record refers to tonic-clonic seizures, R. 368, 501.

address Listing 11.02 in his step three analysis. . . . . Although not per se fatal in and of itself, this cursory analysis of the 11.00 listings contrasts sharply with the ALJ's immediately subsequent almost-two-page analysis of Listings 12.04 and 12.06" and the ALJ "cannot confidently conclude that the decision, read as a whole, nevertheless illustrates that the ALJ considered the appropriate factors in reaching his conclusion that Plaintiff did not meet the requirements of Listing 11.02").

This Court will not speculate as to how the ALJ reached her decision but will instead remand the matter for further consideration even if, upon further examination of these issues, the ALJ again concludes that Plaintiff is not entitled to benefits. *See id.*[9]

## V.   CONCLUSION

For these reasons, the Court **REVERSES** the Commissioner's decision and **REMANDS** the matter for further proceedings consistent with this *Opinion and Order*.

The Court will issue a separate Order issuing final judgment pursuant to Sentence 4 of 42 U.S.C. § 405(g).

**IT IS SO ORDERED.**


Date:  July 29, 2025                    *s/Norah McCann King*
                                        NORAH McCANN KING
                                        UNITED STATES MAGISTRATE JUDGE

---

[9] Plaintiff asserts a number of other errors in the Commissioner's final decision. Because the Court concludes that the matter must be remanded for further consideration of Plaintiff's epilepsy and seizures, the Court does not consider those claims.